# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHIONOGI INC. AND ANDRX LABS, L.L.C., *Plaintiffs*, v. AUROBINDO PHARMA LTD. and AUROBINDO PHARMA USA, INC., *Defendants*. | C.A. No. 1:17-cv-00072-MSG **REDACTED VERSION** |

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO ENFORCE SETTLEMENT AGREEMENT

OF COUNSEL:

David. B. Bassett
WILMER CUTLER PICKERING HALE & DORR LLP
250 Greenwich Street
New York, New York 10007
(212) 230-8800
David.Bassett@wilmerhale.com

Vinita Ferrera
Jonathan B. Roses
WILMER CUTLER PICKERING HALE & DORR LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000
Vinita.Ferrera@wilmerhale.com
Jonathan.Roses@wilmerhale.com

David P. Yin
WILMER CUTLER PICKERING HALE & DORR LLP
1875 Pennsylvania Ave NW
Washington, D.C. 20011
(202) 663-6000
David.Yin@wilmerhale.com

*Attorneys for Plaintiff Shionogi Inc.*

Stephen B. Brauerman (No. 4952)
Sara E. Bussiere (No. 5725)
BAYARD, P.A.
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
sbussiere@bayardlaw.com

*Attorneys for Plaintiffs Shionogi Inc. and Andrx Labs, L.L.C.*

Dated: June 21, 2018
Redacted Version Filed: June 28, 2018

**TABLE OF CONTENTS**

ARGUMENT ..................................................................................................................................2

    A.    Aurobindo's Declaration Is Irrelevant And Fails to Create a Genuine Issue Of Material Fact .................................................................................................................2

    B.    Aurobindo Fails To Demonstrate That The Parties Did Not Agree To All "Essential Terms" .............................................................................................................3

        1.    Shionogi accepted Aurobindo's counterproposal, forming a binding settlement agreement ........................................................................................3

        2.    The timing of ███████████████ does not affect Shionogi's settlement agreement with Aurobindo ........................................................4

        3.    Additional language and boilerplate in the draft memorialization do not affect Shionogi's settlement agreement with Aurobindo .............................5

        4.    ███████████ was not an "essential term" and does not affect Shionogi's settlement with Aurobindo ...........................................................7

    C.    Aurobindo Fails To Show That Execution Of A Formal Document By The Parties Was Contemplated Or Required To Reach A Binding Settlement Agreement .......8

CONCLUSION .............................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aksoy v. SelecTrucks of Am.*, LLC, No. 08-cv-003-GMS, 2009 WL 2992554
    (D. Del. Sept. 18, 2009) ..................................................................................................10

*Alfred E. Mann Found. For Sci. Research v. Cochlear Corp.*, 604 F.3d 1354
    (Fed. Cir. 2010) .................................................................................................................5

*Endo Pharm. Inc. v. Mylan Pharm. Inc.*, No. 11-CV-717 (RMB/KW), 2014 WL
    2532179 (D. Del. June 2, 2014) ...............................................................................8, 9, 10

*Frederick v. Avantix Labs., Inc.*, 2017 WL 995430 (D. Del. Mar. 14, 2017) ................................2

*Hudson Eng'g Co. v. Bingham Pump Co.*, 298 F. Supp. 387 (S.D.N.Y. 1969) .............................4

*Loppert v. WindsorTech, Inc.*, 865 A.2d 1282 (Del. Ch. 2004) .....................................................3

*Maya Swimwear Corp. v. Maya Swimwear, LLC*, 855 F. Supp. 2d 229
    (D. Del. 2012) .................................................................................................4, 6, 7, 9, 10

*Parker-Hannifin Corp. v. Schlegel Elec. Materials, Inc.*, 589 F. Supp. 2d 457
    (D. Del. 2008) ...................................................................................................................8

*SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954
    (2017) ................................................................................................................................9

*Sminkey v. Se. Pa. Transp. Auth.*, No. 93-cv-3183, 1994 WL 502407
    (E.D. Pa. Sept. 7, 1994) ....................................................................................................4

*Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245 (Fed. Cir. 2000) ....................................................5

Defendants' Opposition Brief only serves to confirm that Plaintiffs' Motion to Enforce Settlement Agreement can, and should, be granted based on the undisputed facts. Neither defense counsel's supposed subjective (but unexpressed) intent during the settlement negotiations, nor Defendants' labored, after-the-fact attempts to generate non-essential terms that were allegedly unresolved, can alter the conclusion that—based on the undisputed written communications between the parties—██████████: (1) outside counsel had the authority to bind their clients to the terms of a settlement agreement; (2) the parties' course of dealing had reduced the outstanding "essential terms" to ██ and ██████, an explicit, written agreement was reached as to each of those remaining terms; and (3) the parties never agreed that such agreement would not be binding unless and until there was a signed document memorializing its terms.

At no point anywhere in its 18-page Opposition Brief, nor in Mr. Moore's 15-page declaration, do the Defendants even acknowledge—let alone explain—Mr. Moore's response to Shionogi's acceptance of the settlement terms offered by Aurobindo on ██████. ██████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

Yin Decl. (D.I. 64), ████████████████████████████████████████

Defendants repeatedly assert in their Opposition that the parties "affirmatively" and "positively" agreed that "there would be no binding contract until a formal settlement document was actually executed by the parties themselves." D.I. 75 at 4, 17. But the Court will search the

1

Defendants' opposition filings in vain for a single citation to any alleged communication between the parties in support of that supposed "affirmative" and "positive" agreement. Instead, Defendants rely solely on what they allege is "typical" in the settlements of Hatch-Waxman litigations, and attempt to justify their lack of supporting evidence by haughtily asserting (contrary to this Court's own precedent) that "[t]he bottom line is that everyone who is any type of significant player in the Hatch-Waxman area understands this." D.I. 75 at 17. In fact, what Plaintiffs "understand" is "typical" in all settlement negotiations, Hatch-Waxman litigations or otherwise, is that counsel conducting such negotiations on behalf of their clients will stand behind the representations made during the course of negotiations. The fact that Defendants have had second thoughts about the settlement terms their counsel proposed, and agreed to, on their behalf, in writing, does not negate the existence of a binding agreement on all essential terms.

## ARGUMENT

### A. Aurobindo's Declaration Is Irrelevant And Fails to Create a Genuine Issue Of Material Fact

In determining whether an agreement to settle a lawsuit has occurred, "the parties' 'overt manifestation of assent—***not subjective intent***—controls' the result." *Frederick v. Avantix Labs., Inc.*, 2017 WL 995430, at *2 (D. Del. Mar. 14, 2017) (emphasis added) (citation omitted). Aurobindo apparently agrees that the standard is "whether a ***reasonable negotiator*** . . . would have concluded, in th[e] setting that the agreement reached constituted agreement on all of the terms that the parties themselves regarded as essential." D.I. 75 at 12 (emphasis modified) (citation omitted). Nonetheless, Aurobindo has submitted an attorney declaration (D.I. 76) that consists almost entirely of subjective mental impressions, post hoc rationalizations, and a personal gloss on documents that speak for themselves. As a result, the vast majority of that declaration is simply irrelevant to what a reasonable person—without access to Mr. Moore's private thoughts—would

have objectively concluded based on the parties' written negotiations, and thus should be given no weight. *See Loppert v. WindsorTech, Inc.*, 865 A.2d 1282, 1286 n.25 (Del. Ch. 2004) (enforcing settlement agreement and observing that "[a]lthough at times framed as disputes over material facts, defendant's arguments are really attempts to interpret the facts differently than does plaintiff, especially through affidavits containing self-serving revelations of subjective intent. Such argumentation will not prevent summary judgment . . . .").

> **B.     Aurobindo Fails To Demonstrate That The Parties Did Not Agree To All "Essential Terms"**
>
>> 1.    <u>Shionogi accepted Aurobindo's counterproposal, forming a binding settlement agreement</u>

Aurobindo nakedly asserts that Shionogi did not accept Aurobindo's ▮▮▮ counter-proposal ▮▮▮

▮▮▮

▮▮▮ D.I. 75 at 13. Aurobindo's view cannot be reconciled with the actual facts. In fact, Shionogi ▮▮▮

▮▮▮

▮▮▮

▮▮▮ Yin Decl. (D.I. 64), Ex. 4 at 1 ▮▮▮

▮▮▮ (emphasis added). A reasonable, objective negotiator would readily understand that Shionogi ▮▮▮

▮▮▮

Indeed, Aurobindo *itself* understood that the parties had reached a settlement agreement. Aurobindo's response, conveniently omitted from its brief, ▮▮▮

▮▮▮

▮▮▮ In addition, when Shionogi ▮▮▮

3

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████ *See Maya Swimwear Corp. v. Maya Swimwear, LLC*, 855 F. Supp. 2d 229, 235 (D. Del. 2012).

    2. <u>The timing of ███████████████ does not affect Shionogi's settlement agreement with Aurobindo</u>

███████████████████████████████ cannot, as Aurobindo now belatedly claims, affect the existence of a binding settlement agreement between ***Shionogi*** and Aurobindo. D.I. 75 a 13-14.[1] ██████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████ *Yin Decl.* (D.I. 64), Ex. 4 at 1 ████████████████████████ (emphasis added).

    Furthermore, ███████████████████████ there is a binding agreement ***between Shionogi and Aurobindo***. Defendants routinely settle with some, but not all, plaintiffs in a litigation. *Sminkey v. Se. Pa. Transp. Auth.*, No. 93-cv-3183, 1994 WL 502407, at *1 (E.D. Pa. Sept. 7, 1994) (noting that "[t]he defendants in this action have entered into a settlement agreement with four of the seven plaintiffs"); *Hudson Eng'g Co. v. Bingham*

---

[1]   Despite Aurobindo's professed confusion, Shionogi's counsel has repeatedly made clear that it represents Shionogi, ███████████ *See, e.g.*, D.I. 1 at 13; D.I. 11; D.I. 26 at 1 ("Wilmer Cutler Pickering Hale & Dorr LLP participated on behalf of Plaintiff Shionogi Inc. ('Shionogi'), and Bayard, P.A. participated on behalf of Shionogi and Andrx Labs, L.L.C. ('Andrx').").

4

*Pump Co.*, 298 F. Supp. 387, 388-89 (S.D.N.Y. 1969) (granting voluntary dismissal with prejudice as to one plaintiff "after a settlement had been reached").

Moreover, ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████ As Aurobindo is well aware, Shionogi is the exclusive licensee of the asserted patents and ███████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████ *See* D.I. 1 ¶¶ 24-25 ("Shionogi has an exclusive license" to the patents-in-suit); Yin Decl. (D.I. 64), Ex. 6 at 1, 9, 11-12. ██████████████████████████████████████████████

█████████████████████████████ *See, e.g., Alfred E. Mann Found. For Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1361 (Fed. Cir. 2010) ("[L]icensor's right to sue is rendered illusory by the licensee's ability to settle licensor-initiated litigation by granting royalty-free sublicenses to the accused infringers."); *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1251 (Fed. Cir. 2000) (exclusive licensee "can render [a patentee's] right [to sue for infringement] nugatory by granting the alleged infringer a royalty-free sublicense").

    3.    <u>Additional language and boilerplate in the draft memorialization do not affect Shionogi's settlement agreement with Aurobindo</u>

Aurobindo argues that the formal memorialization included four new exhibits and added ████████████████████████████ But Aurobindo misunderstands the law. Shionogi unconditionally accepted a "mirror image" of Aurobindo's ████████, counter-proposal, which created a binding settlement agreement. Yin Decl. (D.I. 64), █████████████

████████████████████████████████████████████████████████████████

5

That binding acceptance did not prevent Shionogi from then exchanging a draft document for formal execution containing new, nonessential terms.

In *Maya Swimwear*, for example, the Court noted that, after the parties agreed to all essential terms of a settlement agreement, plaintiffs' counsel stated that "other fine points" "still required negotiation." 855 F. Supp. 2d 229, 236 & n.5 (D. Del. 2012). The Court rejected the defendants' argument that "other fine points" "illustrated in plaintiffs' draft settlement agreement . . . which introduced a variety of terms that had never been proposed, accepted or even mentioned" at all impaired the parties' settlement agreement. *See id.* at 236. Under Delaware law, "a written settlement document will necessarily contain additional, boilerplate and conventional settlement language, not specifically addressed by the parties. . . . The inclusion of such language does not mean that essential terms remained outstanding or a counteroffer was made." *Id.*

This case is no different. Aside from claiming they were "new," Aurobindo makes no attempt to explain why the four exhibits ▮▮▮▮▮▮ were "essential" (or, indeed, what objections Aurobindo even has to them). The exhibits attached to the end of the settlement agreement are ▮▮▮▮▮▮

▮▮▮▮▮▮ *See* Moore Decl. (D.I. 76), Ex. C. Similarly, ▮▮▮▮▮▮

▮▮▮▮▮▮ *See* Yin Decl. (D.I. 64), ▮▮▮▮▮▮

6

▇

Finally, ▇ ▇ does not indicate that the parties did not agree to essential terms. ▇ are consistent with Shionogi's permissible exchange of a "draft agreement" with other "fine points"—but not essential terms—to be negotiated by the parties. *See Maya Swimwear*, 855 F. Supp. at 236.

▇



Aurobindo asserts that "counsel for the parties[] did positively agree that [] there would be no binding contract until a formal settlement document was actually executed." D.I. 75 at 17. But Aurobindo failed to cite *any* document or conversation where such a "positive" agreement was made. That is because there was none. Instead, Aurobindo asserts, relying only on the say-so of its counsel, that there could be no settlement agreement until execution of a formal settlement document because that is "typical in the settlement of Hatch-Waxman cases," which are "typically different from settlement agreements typically found in other types of more 'vanilla' commercial litigation." D.I. 75 at 17.

---

2   Put differently, the undisputed written negotiations demonstrate that,

*First*, Aurobindo is wrong that parties cannot (or "typically" do not) agree to settle Hatch-Waxman litigation without a signed agreement. Aurobindo's bald assertion is belied by its own admission that parties in Hatch-Waxman suits routinely agree to settle on the eve of trial before having signed a formal agreement. D.I. 75 at 17. *Second*, even if Aurobindo were correct about what is "typical" in Hatch-Waxman litigation, such custom is not evidence of "positive" agreement, and Aurobindo's subjective experience in Hatch-Waxman cases cannot supplant Delaware contract law that "[t]he question is ***whether the parties positively agree*** that there will be no binding contract until the formal document is executed." *Maya Swimwear*, 855 F. Supp. 2d at 235 (emphasis added) (citation omitted). *Third*, the Supreme Court has repeatedly emphasized that patent cases should not, without statutory justification, be treated differently from other civil litigation. *E.g.*, *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954, 964 (2017) (rejecting special rule for laches). And, in fact, this Court has enforced agreements to settle Hatch-Waxman litigation in the absence of a formal document. *See, e.g.*, *Endo Pharm.*, 2014 WL 2532179, at *9 (enforcing settlement agreement and noting that "Endo refers to its (unwritten) practice of entering written settlement agreements, especially in Hatch-Waxman litigations such as this one. . . . However, Endo failed to advise Mylan of this practice or Endo's view that any verbal agreement would not be final and enforceable until it was formalized in writing.").[3]

*Fourth*, Aurobindo notes that the formal settlement document contained signature blocks. D.I. 75 at 18. Courts have long recognized, however, that a "formal document [may later be] executed" that will "necessarily contain additional, boilerplate and conventional settlement

---

[3] This Court and the defendant in *Endo* thus would likely have disagreed with Aurobindo's assertion here that "everyone who is any type of significant player in the Hatch-Waxman area understands" that parties to such cases cannot agree to settle unless and until there is a written, signed memorialization. D.I. 75 at 17.

9

language." *Maya Swimwear*, 855 F. Supp. 2d at 236-37 (citation omitted); *see also Endo Pharm.*, 2014 WL 2532179, at *10 ("Although both parties clearly intended that a written contract would ultimately be drafted . . . the record contains no evidence indicating that the parties made a settlement contingent upon the execution of a written agreement."). That Shionogi and Aurobindo contemplated that the parties would later execute a written memorialization falls well short of a "positive agreement" to require one before a binding agreement could be formed.

*Finally*, Aurobindo suggests that "at no time . . . did [Aurobindo's counsel] ever indicate . . . that he had the authority to conclusively bind his clients." D.I. 75 at 4. ███████████████████████████████████████████████████████████████████████████████ ███, *see* D.I. 63 at 18-20, and his starkly different, after-the-fact denials of authority only underscore his recognition ███████████████████████████.

The clear rule, moreover—which Aurobindo simply fails to address—is that Aurobindo's attorney of record "is *presumed* to have lawful authority to make [a settlement] agreement." *Aksoy v. SelecTrucks of Am.*, LLC, No. 08-cv-003-GMS, 2009 WL 2992554, at *2 (D. Del. Sept. 18, 2009) (emphasis added) (citation omitted). As described above, Aurobindo cannot now rebut that presumption by pointing to the existence of "signature blocks" in a memorialization. Nor can Aurobindo overcome that presumption by alleging its counsel "never committed or promised" that he had authority, or by declaring what is "custom and practice in" Hatch-Waxman litigation (and ignoring case law to the contrary), or by vaguely referencing the parties' "course of conduct" without citing a single specific supporting instance. D.I. 76, ¶¶ 15, 20.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Enforce Settlement Agreement should be granted.


| | |
|---|---|
| Dated:  June 21, 2018<br> Redacted Version Filed: June 28, 2018<br>OF COUNSEL:<br><br>David. B. Bassett<br>WILMER CUTLER PICKERING HALE & DORR LLP<br>250 Greenwich Street<br>New York, New York 10007<br>(212) 230-8800<br>David.Bassett@wilmerhale.com<br><br>Vinita Ferrera<br>Jonathan B. Roses<br>WILMER CUTLER PICKERING HALE & DORR LLP<br>60 State Street<br>Boston, Massachusetts 02109<br>(617) 526-6000<br>Vinita.Ferrera@wilmerhale.com<br>Jonathan.Roses@wilmerhale.com<br><br>David. P. Yin<br>WILMER CUTLER PICKERING HALE & DORR LLP<br>1875 Pennsylvania Ave NW<br>Washington, D.C. 20011<br>(202) 663-6000<br>David.Yin@wilmerhale.com<br><br>*Attorneys for Plaintiff Shionogi Inc.* | BAYARD, P.A.<br><br> /s/ Stephen B. Brauerman<br>Stephen B. Brauerman (No. 4952)<br>Sara E. Bussiere (No. 5725)<br>222 Delaware Avenue, Suite 900<br>P.O. Box 25130<br>Wilmington, Delaware 19801<br>(302) 655-5000<br>sbrauerman@bayardlaw.com<br>sbussiere@bayardlaw.com<br><br>*Attorneys for Plaintiffs Shionogi Inc. and Andrx Labs, L.L.C.* |